UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.A.P.C.,<br><br>            Petitioner,<br><br>      v.<br><br>MINGA WOFFORD, *et al.*,<br><br>            Respondents. | Case No.  1:25-cv-01546-JLT-CDB (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT IN PART PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS<br><br>(Doc. 1)<br><br>**14-DAY OBJECTION PERIOD** |

Petitioner E.A.P.C.[1] ("Petitioner"), a federal detainee proceeding by counsel, initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  For the reasons set forth herein, the undersigned recommends that Petitioner's petition for writ of habeas corpus be granted in part.

**I.      Relevant Background**

For the purpose of these findings and recommendations, the undersigned refers to and incorporates by reference the factual and procedural background set forth in the Court's order converting the matter to a preliminary injunction and granting the preliminary injunction in part (Doc. 12 at 1-4).

Petitioner filed the instant petition, a request for emergency injunctive relief, and a motion

---

[1] On December 11, 2025, the Court granted Petitioner's unopposed request to proceed via pseudonym as to Petitioner E.A.P.C.  (Doc. 17).

1  to proceed via pseudonym on November 12, 2025, while in the custody of the Immigration and
2  Customs Enforcement ("ICE") at the Mesa Verde ICE Processing Center in Bakersfield, California.
3  (Doc. 1 ¶ 28); *see* (Docs. 1-3). On November 13, 2025, the Court preliminarily reviewed the
4  petition and request for emergency injunctive relief and found that Petitioner may be able to
5  demonstrate success on his due process claim and that some form of immediate relief may be
6  appropriate. (Doc. 6). The Court therefore ordered Respondents to show cause in writing why the
7  Court should not grant Petitioner's motion for a temporary restraining order and set a briefing
8  schedule for Petitioner's reply thereto. *Id.* On November 18, 2025, Respondents filed an
9  opposition to Petitioner's motion for a temporary restraining order and on November 20, 2025,
10 Petitioner filed a reply. (Docs. 10, 11).

11 On November 25, 2025, the Court converted the matter to a preliminary injunction and
12 granted the preliminary injunction in part and referred the matter to the undersigned for a
13 recommendation on the merits of the petition. (Doc. 12). The Court ordered that Petitioner shall
14 be provided a substantive parole revocation hearing at which an immigration judge will determine
15 whether Petitioner poses a risk of flight or a danger to the community if he is released, with the
16 government to bear the burden of establishing, by clear and convincing evidence, that Petitioner
17 poses a danger to the community or a risk of flight. *Id.* at 21. The government was permitted to
18 file a further brief on the merits of the habeas petition within 45 days of the order, or alternatively,
19 to file within 30 days a notice that it does not intend to file further briefing. *Id.*

20 On December 18, 2025, the government filed a notice indicating that it does not intend to
21 file further briefing in this matter. (Doc. 18). Therefore, the government's filings made in
22 connection with its opposition to Petitioner's motion for a temporary restraining order (Doc. 10)
23 serves as its argument on the merits of the habeas petition.

24 **II.     Governing Authority**
25          **A.     Statutory Immigration Framework (8 U.S.C. § 1225 and § 1226)**
26 Two statutes govern the detention and removal of inadmissible noncitizens from the United
27 States: 8 U.S.C. § 1226 and § 1225. Relevant here is the legal background accurately presented by
28 the district court in *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503 (N.D.

2

Cal. Sept 12, 2025):[2]

### 1. Full Removal Proceedings and Discretionary Detention (§ 1226)

The "usual removal process" involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section § 1226 provides that while removal proceedings are pending, a noncitizen "may be arrested and detained" and that the government "may release the alien on ... conditional parole." § 1226(a)(2); *accord Thuraissigiam*, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country"). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). A noncitizen will be released if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 236.1(c)(8)).

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates by the preponderance of the evidence that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his or his release. *Diaz*, 53 F.4th at 1197 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Once released, the noncitizen's bond is subject to revocation. Under 8 U.S.C. § 1226(b), "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). However, if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

### 2. Expedited Removal and Mandatory Detention (§ 1225)

While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," a process that provides for expedited

---

[2] The Court incorporates and adopts herein the legal framework set forth in the Court's order granting in part Petitioner's motion for preliminary injunction. *See* (Doc. 12 at 4-10).

3

removal. *Jennings*, 583 U.S. at 303 (2018). Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides that:

> "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution."

Sections 8 U.S.C. § 1182(a)(6)(C) and 1182(a)(7) respectively refer to noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. Clause (iii) of § 1225(b)(1) allows the Attorney General (who has since delegated the responsibility to the Department of Homeland Security Secretary) to designate for expedited removal noncitizens "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." § 1225(b)(1)(A)(iii)(II).

To summarize, under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group –designated noncitizens –includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109; § 1225(b)(1).

"Initially, DHS's predecessor agency did not make any designation [under (3)], thereby limiting expedited removal only to 'arriving aliens,'" that is, noncitizens encountered at ports of entry. *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 U.S. Dist. LEXIS 169432, at *14 (D.D.C. Aug. 29, 2025). In the following years, DHS extended by designation expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and to noncitizens apprehended within 100 air miles of any U.S.

international land border who entered within the last 14 days. *Id.* This was the status quo until January 2025, when the Department of Homeland Security revised its § 1225 designation to "apply expedited removal to the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). Under this designation, expedited removal applies to noncitizens encountered *anywhere* within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation. In short, expedited removal was expanded to apply for the first time to vast numbers of noncitizens present in the interior of the United States.

Under the expedited removal statute § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer determines that the applicant has a "credible fear," the applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110. If the officer determines there is no "credible fear," the officer "shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(B)(iii). However, the officer's decision may be appealed by the applicant to an immigration judge, who must conduct the review "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." *Id.* Detention under § 1225(b)(1) is "mandatory" "pending a final determination of credible fear of persecution and if found not to have such a fear, until removed." *Id.* (citing § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.")

[Section] 1225 also contains a provision that applies to applicants for admission not covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. This provision, 1225(b)(2), states that, subject to statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [full removal proceedings] of this title." § 1225(b)(2). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their full removal proceedings are pending. This is in contrast to the default detention regime under § 1226(a), which allows for discretionary release and review of detention through a bond hearing.

### 3. The Government's Recent Change in Position

Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation. This practice was codified by regulation. The regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996

5

> ("IIRIRA") state that "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In fact, the government has conceded in other contexts that "DHS's long-standing interpretation has been that 1226(a) [discretionary detention] applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Dkt. No. 17 (citing Solicitor General, Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)) . . .
>
> In 2025, however, the Government's policy changed dramatically. The DHS revised its § 1225 designation to "apply expedited removal *to the fullest extent authorized by statute.*" Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). The Secretary of Homeland Security memorandum directed federal immigration officers to "consider ... whether to apply expedited removal" to "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied." Dkt. No. 1 at ¶ 33. Officers are encouraged to "take steps to terminate any ongoing removal proceeding and/or any active parole status." *Id.* The memorandum states that DHS shall take the actions contemplated by the memorandum "in a manner that takes account of legitimate reliance interests," but states that "the expedited removal process includes asylum screening, which is sufficient to protect the reliance interests of any alien who has applied for asylum or planned to do so in a timely manner." Huffman Memorandum (Jan. 23, 2025).
>
> Since mid-May of 2025, the Department of Homeland Security has made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. Dkt. No. 1 at ¶¶ 35–40. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision.

*Salcedo Aceros*, 2025 WL 2637503 at *1-4 (internal footnotes omitted).

**B.   Parole Revocation**

In *Y-Z-H-L v. Bostock*, 2025 WL 1898025, at *10–12 (D. Or. July 9, 2025), the court explained the parole process in immigration cases and noted that before parole may be revoked, the parolee must be given written notice of the impending revocation, which must include a cogent description of the reasons supporting the revocation decision. The court held:

> Section 1182 . . . has a subsection titled "Temporary admission of nonimmigrants," which allows noncitizens, even those in required detention, to be "paroled" into the United States. This provision, at issue in this case, states:

6

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and **when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.**
>
> 8 U.S.C. § 1182(d)(5)(A).

*Y-Z-H-L v. Bostock*, 2025 WL 1898025, at *3 (emphasis added). *Y-Z-H-L* determined that under the Administrative Procedure Act, immigration parolees are entitled to determinations related to their parole revocations that are not arbitrary, capricious or an abuse of discretion. *Id*. at *10. An agency acts arbitrarily and capriciously by failing to make a reasoned determination or where the agency fails to "articulate[] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id*. Parole revocations in the context of the INA must occur on a case-by-case basis and may occur "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled." *Id*. at *12 (quoting 8 C.F.R. § 212.5(e)). 8 C.F.R. § 212.5(e) requires written notice of the termination of parole except where the immigrant has departed or when the specified period of parole has expired.

Applying *Y-Z-H-L* and § 212.5(e), in *Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV, 2025 WL 1953796, at *11 (W.D.N.Y. July 16, 2025), the court found that the INA requires a case-by-case analysis as to the decision to revoke humanitarian parole:

> This Court agrees that both common sense and the words of the statute require parole revocation to be analyzed on a case-by-case basis and that a decision to revoke parole "must attend to the reasons an individual [noncitizen] received parole." *See id*. There is no indication in the record that the government conducted any such analysis here. On the contrary, the letter Mata Velasquez received merely stated summarily that DHS had "revoked [his] parole." Docket Item 62-1 at 5. Thus, there is no indication that—as required

> by the statute and regulations—an official with authority made a determination specific to Mata Velasquez that either "the purpose for which [his] parole was authorized" has been "accomplish[ed]" or that "neither humanitarian reasons nor public benefit warrants [his] continued presence...in the United States." *See* 8 C.F.R. § 212.5(e)(2)(i). As a result, DHS's revocation of Mata Velasquez's parole violated his rights under the statute and regulations. *See Y-Z-L-H*, 2025 WL 1898025, at *13.

In *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025), the court reached a similar conclusion relying on the Due Process Clause:

> . . . **even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody**. *See Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021); *Ortiz Vargas v. Jennings*, No. 20-cv-5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega*, 415 F. Supp. 3d at 969 ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.").

*Id.* (emphasis added). Other courts, including this Court, have held similarly. *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025); *see Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals.").

### III.     Exhaustion

#### A.     Governing Authority

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United*

1  *States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). "Under the doctrine of exhaustion, 'no one is
2  entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been
3  exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)).
4  "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it
5  may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement."
6  *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review*, 959 F.2d
7  742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)). "Although
8  courts have discretion to waive the exhaustion requirement when it is prudentially required, this
9  discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion
10 requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v.*
11 *Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring
12 exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly
13 to be disregarded.").

### B. Analysis

Petitioner contends in his petition that it would be futile to seek a bond hearing from an immigration judge as his request would be summarily denied based on the government's current interpretation of the Board of Immigration Appeal's ("BIA") recent decisions in *Matter of Q. Li*, 19 I&N Dec. 66 (B.I.A. 2025) and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025). (Doc. 1 ¶ 35). Petitioner argues that no statutory exhaustion requirements apply to his claims of unlawful custody in violation of his due process rights and that there are no administrative remedies that he needs to exhaust. *Id.* ¶ 36.

Respondents do not address exhaustion of administrative remedies in their opposition to the motion for preliminary injunction and, as noted above, have elected not to further brief this issue. *See* (Docs. 10, 18).

The Court finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means. Specifically, because Respondents contend that Petitioner is subject to indefinite mandatory detention under 8 U.S.C. § §1 225(b) (*see* Doc. 10 at 6), under that framework, Petitioner has no statutory right to a bond hearing during his course of

1    detention and therefore lacks recourse through statutory or administrative means. *See Jennings v.*
2    *Rodriguez,* 583 U.S. 281, 282 (2018) ("§§ 1225(b) … do[e]s not give detained aliens the right to
3    periodic bond hearings during the course of their detention."); *Rodriguez Diaz v. Garland*, 53 F.
4    4th 1189, 1201 (9th Cir. 2022).  Further, the BIA has recently held that all noncitizens present
5    within the country without admission are seeking admission pursuant to § 1225, rendering any
6    administrative relief futile. *See J.A.C.P. v. Wofford*, No. 1:25-CV-01354-KES-SKO (HC), 2025
7    WL 3013328, at *7 (E.D. Cal. Oct. 27, 2025) ("In addition, pursuit of administrative remedies
8    would almost certainly be futile given the BIA's recent holding that all noncitizens present in the
9    United States without admission are 'seeking admission' for purposes of 8 U.S.C. § 1225(b)(2)(A)
10   and must be detained.") (citing *Hurtado*, 29 I&N Dec. 216).

11       For these reasons and because Respondents do not object to and do not otherwise address
12   Petitioner's arguments that exhaustion should be waived, the Court will waive the prudential
13   exhaustion requirement for Petitioner's claim for habeas corpus relief. *See Chavez v. Noem*, No.
14   3:25-CV-02325-CAB-SBC, 2025 WL 2730228, at *3 (S.D. Cal. Sept. 24, 2025) (waiving
15   prudential exhaustion requirement because the BIA "already applied its expertise in deciding and
16   designating" *Hurtado* as precedential, pursuant to which detainees are subject to mandatory
17   detention without bond under § 1225(b)(2)); *e.g.*, *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253
18   (W.D. Wash. 2025) ("The Ninth Circuit has recognized 'the irreparable harms imposed on anyone
19   subject to immigration detention.'") (citing *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir.
20   2017)); *Beltran v. Noem*, No. 25-cv-2650-LL-DEB, 2025 WL 3078837, at *4 (S.D. Cal. Nov. 4,
21   2025); *Kuzmenko v. Phillips*, No. 25-cv-00663-DJC-AC, 2025 WL 779743, at *4 (E.D. Cal. Mar.
22   10, 2025)).

23   **IV.    Discussion**

24       Petitioner asserts two causes of action in his petition: the "First Cause of Action" alleges a
25   violation of procedural due process and the "Second Cause of Action" alleges a violation of
26   substantive due process.  Both causes of action invoke the Fifth Amendment to the U.S.
27   Constitution.

28       "The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be

deprived of life, liberty, or property, without due process of law.'" *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

### A.   Procedural Due Process

#### 1.   Governing Authority

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth … Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'" *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746). "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'" *Mathews*, 424 U.S. at 902 (citation omitted). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see Hernandez*, 872 F.3d at 990 ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d

11

1196, 1203 (9th Cir. 2011)).

### 2. Analysis

The undersigned finds that, given the government stands solely on its arguments already considered by the Court in its order granting in part Petitioner's motion for a preliminary injunction, and for the same reasons the Court found that Petitioner is likely to succeed on the merits of his procedural due process claims, the undersigned recommends the Court grant Petitioner's petition for writ of habeas corpus as to his procedural due process claim.

In the Court's order granting in part Petitioner's motion for a preliminary injunction, the Court found that Petitioner demonstrated a likelihood of success on the merits of his procedural due process claim. (Doc. 12 at 17). The Court reasoned that because Petitioner has been present in the United States for approximately four years and was released on his own recognizance by ICE pending completion of Section 240 removal proceedings before Respondents adopted a new interpretation of the governing statutes, § 1225(b)(2) and § 1226, the government's new interpretation does not apply here such that Petitioner's detention is not "mandatory" in this action. *Id.* at 13. As to Petitioner's arguments that his continued detention violates his due process rights, the Court reasoned that Respondents failed to contend with the liberty interest created by the fact that Petitioner was released on his own recognizance in November 2021 before the government adopted its recent interpretation of the governing statutes. *Id.* at 14-15; *see Pinchi*, 792 F. Supp. 3d at 1032 ("…even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody[,] she has a protected liberty interest in remaining out of custody[.]") (citations omitted); *Doe*, 2025 WL 691664, at *4; *see also Padilla*, 704 F. Supp. 3d at 1172 ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals.").

In applying the three-part test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)—which "requires consideration of three distinct factors: [(1)] the private interest that will be affected by the official action; [(2)] the risk of an erroneous deprivation of such interest through

12

the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [(3)] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail"—the Court found that Petitioner has a substantial private interest in being out of custody. The Court reasoned that during his approximately four years on parole, Petitioner pursued gainful employment, fostered relationships within his community, and kept a clean criminal record within the terms of that parole such that his detention denies that liberty interest. *Id.* at 15. Further, the Court found that there is at least some risk of erroneous deprivation given the record suggested several reasons why Petitioner's detention may not be justified, including Petitioner's release on parole in 2021 wherein DHS necessarily concluded that Petitioner was not a flight risk or a danger to the community, and the question of whether Petitioner's missed biometric check-ins constitute changed circumstances sufficient to convince an immigration judge that detention is required, in light of rapidly evolving caselaw, necessitated that some pre-deprivation process was required here to justify Petitioner's re-detention. *See id.* at 16. In consideration of the last *Mathews* factor, the Court concluded that the government's interest in detaining Petitioner without proper process is slight. *Id.* at 17. Therefore, under *Mathews*, because Petitioner has shown the procedures or lack thereof as applied to Petitioner are not sufficient to protect his liberty interest, the Court concluded that Petitioner has demonstrated a likelihood of success on the merits of his procedural due process claim. *Id.*

Because the government does not raise any new argument in response to the Court's findings on Petitioner's procedural due process claim and, thus, does not rebut that the merits of Petitioner's procedural due process claim are likely to succeed, the undersigned will recommend that the Court grant Petitioner's petition as to his procedural due process claim.

**B.    Substantive Due Process**

1.    Governing Authority

"[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *Salerno*, 481 U.S. at 746 (citations omitted).

13

In the criminal context, the Ninth Circuit has held that "[a] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) (citing *Salerno*, 481 U.S. at 747). "[W]hile the existence of some threshold of per se due process violation may be 'undisputed,' it has also never been clearly delineated in the context of immigration detention." *Doe v. Becerra*, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) (internal citation omitted), *abrogated on other grounds by Doe v. Garland*, 109 F.4th 1188 (9th Cir. 2024).

    2.  Analysis

Petitioner's substantive due process claim largely mirrors his procedural due process claim addressed above. *Cf.* (Doc. 1 ¶¶ 98-102) *with* (*id.* ¶¶ 103-08). Specifically, he alleges that the government may not unjustifiably deprive him of his vested liberty interest in conditional release on parole and that his continued detention is punitive in nature given he attended all of his court hearings and appointments. *Id.* ¶ 105.

Similarly, in both his moving papers and his reply brief in support of the motion for preliminary injunction, Petitioner argues that immigration detention, which is civil in nature, must be justified by a finding of dangerousness or a flight risk and that absent these rationales, the detention serves no legitimate purpose and becomes impermissibly punitive in violation of substantive due process. (Doc. 2 at 9-10; Doc. 11 at 8) (citing *inter alia Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 994; *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). In opposing the motion for preliminary injunction, Respondents did not directly address the substantive due process claim aside from arguing generally that Petitioner is unlikely to prevail because he is an applicant for admission subject to mandatory detention pending his removal proceedings. (Doc. 10 at 5-7).

As the Court found in its order granting in part Petitioner's motion for preliminary injunction, Respondents rely on an incorrect interpretation of § 1225 for the authority to detain Petitioner. (Doc. 12 at 12-13). The Court noted the various legal arguments relied upon by the government to support the assertion that Petitioner's detention is "mandatory" under § 1225(b) while his removal proceedings are pending have been rejected by this Court in other proceedings.

*Id.* (citing, *e.g.*, *Ortiz Donis v. Chestnut*, 1:25-cv-01228-JLT, 2025 WL 2879514 (E.D. Cal. Oct. 9, 2025); *M.R.R. v. Chestnut*, No. 1:25-cv-01517-JLT, 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025)). Because Petitioner was processed by immigration officials and was released on recognizance pending completion of Section 240 removal proceedings, the Court noted how Petitioner's circumstances are materially different from cases upon which Respondents relied where individuals who had been living in the United States for nearly 30 years remained noncitizen applicants for admission under § 1225(b)(2) and were therefore subject to mandatory detention without a pre-deprivation hearing. *Id.* at 13. And as noted above, the Court rejected Respondents' argument in finding that, assuming *arguendo* Respondents' recent interpretation of § 1225(b)(2) is proper and may be applied to applicants for admission going forward, that interpretation does not apply here because the government placed Petitioner in Section 240 removal proceedings such that Petitioner's detention is not mandatory. *Id.* at 13-14.

Notwithstanding the undersigned's finding above that Petitioner's procedural due process rights were violated, the undersigned finds Petitioner fails to establish that his detention served "no regulatory purpose that can rationally be assigned to the detention" or that his detention was "excessive in relation to its regulatory purpose" such that the Court may conclude the detention was punitive. *Torres*, 995 F.3d at 708 (citing *Salerno*, 481 U.S. at 747). Petitioner does not allege in his petition that his detention was motivated by any intent of Respondents to punish him. Rather, he pleads that his continued detention is punitive in nature given that he attended all of his court hearings and appointments, undermining any inference that his detention is permissible due to flight and/or danger considerations.

However, Petitioner's allegations are at least partially contradicted by the record evidence. First, in connection with his supervised release, Petitioner concedes that he submitted late check-in photos to DHS on three occasions. (Doc. 1-2 at 3). Second, Petitioner does not persuasively refute Respondents' evidence that during his supervised release, Petitioner did not comply with his reporting requirements on numerous occasions: August 4, 2025, (Missed Biometric Check-in); August 8, 2025 (Missed Virtual Office Visit); August 11, 2025, (Missed Biometric Check-in); August 25, 2025 (Missed Biometric Check-in); and October 6, 2025 (Missed Biometric Check-in).

(Doc. 10-1; ¶ 8). Finally, Petitioner signed an acknowledgement that his release was contingent on enrollment and successful participation in his monitored release program, and that "[f]ailure to comply with the requirements of the [release] program will result in a redetermination of your release conditions or your arrest and detention." *Id*. at Exhibit 2 at 1, 2, 4. In light of this evidence, Petitioner does not show that his detention was punitive or excessive in relation to the purpose of the governing detention regime.

The only recent immigration-related case cited by Petitioner where the court addressed a substantive due process violation in a habeas petitioner's detention (Doc. 2 at 9-10 & Doc. 11 at 8, citing *Mahdawi v. Trump*, No. 2:25- CV-389, 781 F. Supp. 3d 214 (D. Vt. 2025), *appeal filed*, No. 25-1113 (2d Cir.)) presents starkly contrasting facts and illustrates how Petitioner's detention here cannot be deemed punitive. In *Mahdawi*, the petitioner was a lawful permanent resident who alleged he was arrested by immigration authorities in retaliation for his protected speech or to chill the speech of others. The court granted his motion for release under *Mapp v. Reno* (241 F.3d 221 (2d Cir. 2001) pending resolution of the merits of his petition for habeas corpus, finding the petitioner raised a substantial question concerning the constitutionality of his continued detention. Importantly, while the *Mahdawi* court presumed a lawful permanent resident has a substantive due process right to be free from punitive immigration detention, relevant here, the court reasoned, "[i]f the Government detained Mr. Mahdawi as punishment for his speech, that purpose is not legitimate, regardless of any alleged First Amendment violation. Immigration detention cannot be motivated by a punitive purpose." *Id.* at 232.

There is no similar evidence here that Respondents' detention of Petitioner was motivated by a punitive purpose. Notwithstanding the Court's earlier finding that Petitioner is likely to succeed on the merits of his claims given Respondents' erroneous interpretation and application of the immigration detention regime under § 1225 and § 1226, the undersigned cannot find that no regulatory purpose may be assigned to his detention such as to constitute a substantive due process violation, particularly given the record evidence of his violations of release conditions and acknowledgement that such violations could result in his re-arrest. *Torres*, 995 F.3d at 708.

Following the decision of a district court judge in the Northern District of California, other

courts, including at least one judge of this Court, have applied a multi-factor test when considering a habeas claim of substantive due process violation brought by an immigration detainee. *See generally, Doe v. Chestnut*, -- F. Supp. 3d --, No. 1:24-cv-00943-EPG-HC, 2025 WL 3240400 (E.D. Cal. Nov. 20, 2025) (citing *Doe v. Becerra*, 732 F. Supp. 3d 1071 (N.D. Cal. 2024)). *Cf. Espinoza v. Wofford*, No. 1:24-cv-01118-SAB-HC, 2025 WL 1556590, at *7 n.7 (E.D. Cal. June 2, 2025) (acknowledging but declining to adopt and apply the *Doe v. Becerra* test). Because Petitioner here does not cite *Doe v. Becerra* and does not argue that the Court should consider the multi-factor test defined in that nonprecedential opinion, the undersigned does not undertake an analysis pursuant to *Doe* except to note that several of the *Doe* factors would seem to weigh in favor of finding no substantive due process violation. Specifically, the length of Petitioner's detention has been relatively brief and there is at least some evidence (specifically, evidence of noncompliance with release conditions) supporting the contention that Respondents' detention of Petitioner was motivated by concerns regarding his risk of flight.

Accordingly, the undersigned will recommend that the Court deny Petitioner's petition as to his substantive due process claim.

**V.     Conclusion and Recommendation**

Accordingly, IT IS RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus (Doc. 1) be GRANTED IN PART only as to "First Cause of Action – Procedural Due Process"; and
2. The Clerk of the Court be DIRECTED to close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections, but a party may refer to exhibits in the record by CM/ECF document and page number. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing

these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: __**January 5, 2026**__           _____
                                         UNITED STATES MAGISTRATE JUDGE