UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.A.P.C.,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>MINGA WOFFORD, *et al.*,<br><br>　　　　　Respondents. | Case No. 1:25-cv-01546-JLT-CDB (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT IN PART PETITIONER'S MOTION FOR AWARD OF ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 2412<br><br>(Doc. 23)<br><br>**14-Day Deadline** |

Petitioner E.A.P.C.[1] ("Petitioner"), formerly a federal detainee proceeding by counsel, initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Pending before the Court is the motion of Petitioner's counsel for the award of attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Doc. 23). Respondents Minga Wofford (Field Office Director, Mesa Verde), Sergio Albarran (Field Office Director of the Immigration and Customs Enforcement ("ICE")), Todd M. Lyons (formerly Acting Director of ICE), Kristi Noem (formerly Secretary of the Department of Homeland Security ("DHS")), and Pamela Bondi (formerly Attorney General of the United States) (collectively, "Respondents") filed an opposition (Doc. 26) and Petitioner replied (Doc. 27).

---

[1] On December 11, 2025, the Court granted Petitioner's unopposed request to proceed via pseudonym as to Petitioner E.A.P.C. (Doc. 17).

## I.      **Relevant Background**

Following the parties' briefing on Petitioner's application for temporary restraining order, on November 25, 2025, the Court converted the matter to a preliminary injunction and granted the preliminary injunction in part after finding that Petitioner was likely to prevail on his claim that his immigration detention by Respondents violated his procedural due process rights under the Fifth Amendment to the U.S. Constitution.  *See* (Doc. 12 at 17).  The Court ordered Respondents to provide Petitioner with a substantive parole revocation hearing no later than December 9, 2025, at which the government bears the burden of establishing by clear and convincing evidence that Petitioner poses a risk of flight or a danger to the community if he is released.  *Id.* at 21.

On the merits of the petition, the parties largely rested on their arguments considered in connection with Petitioner's motion for preliminary injunction.  *See* (Doc. 18).  On January 6, 2026, the undersigned issued findings and recommendations to grant in part Petitioner's petition only as to his procedural due process claim.  (Doc. 19).  On January 29, 2026, the Court adopted the findings and recommendations and granted in part the petition as to Petitioner's first cause of action for violation of his procedural due process rights.  (Doc. 21).  Judgment for Petitioner was entered thereafter.  (Doc. 22).

On May 2, 2026, the parties filed a stipulated request to hold in abeyance briefing on Petitioner's pending motion for attorney fees.  (Doc. 24).  Based on the parties' stipulated representations, and for good cause shown, on May 4, 2026, the Court set a briefing schedule on Petitioner's motion for attorney fees.  (Doc. 25).

## II.     **Governing Authority**

The EAJA provides for an award of attorney fees and costs to private litigants who prevail "in any civil action (other than cases sounding in tort)" against the United States and timely file a petition for fees.  28 U.S.C. § 2412(d)(1)(A).  Under the EAJA, a court shall award attorney fees to the prevailing party unless it finds the government's position was "substantially justified or that special circumstances make such an award unjust."  28 U.S.C. § 2412(d)(1)(A).

///

///

2

### III.    Discussion

Respondents oppose Petitioner's motion for award of attorney's fees and costs, contending that the EAJA does not permit the award of attorneys' fees here because Respondents' position was "substantially justified." *See* (Doc. 26).

**A.    Whether Respondents' Position was "Substantially Justified" Under the EAJA**

Respondents argue Petitioner should not be awarded fees under the EAJA because the government's positions in this litigation were substantially justified.

To defeat a prevailing party's claim to attorney's fees under the EAJA, the government bears the burden of showing that its position was substantially justified. *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005) (citing *Gonzales v. Free Speech Coal*., 408 F.3d 613, 618 (9th Cir. 2005)). To be substantially justified, the government's position must have a "reasonable basis" in law and fact. *Id*. (citations omitted). "When evaluating the government's 'position' under the EAJA, [courts] consider both the government's litigation position and the 'action or failure to act by the agency upon which the civil action is based.'" *Ibrahim v. U.S. Dep't of Homeland Security*, 912 F.3d 1147, 1168 (9th Cir. 2019) (*quoting* 28 U.S.C. § 2412(d)(1)(B)).

Respondents maintain in opposition to Petitioner's fee motion that their litigation position was substantially justified given that Petitioner's detention was pursuant to a statute they assert mandates detention, and Respondents relied on a "credible interpretation" of 8 U.S.C. § 1225, "one which remains an open question in the Ninth Circuit." *See* (Doc. 26 at 2, citing 8 U.S.C. § 1225).

Even if that premise is true, Respondents continue to unreasonably discount the applicability of the Due Process Clause under the Fifth Amendment to the U.S. Constitution when, as here, immigration authorities seek to maintain custody of a noncitizen who had been released on his own recognizance by ICE for approximately four years, without any determinate endpoint. In Respondents' characterization of governing precedent as referenced in their opposition and maintained in their arguments in this case (*see* Docs. 10, 18, 20, 26), § 1225(b)'s provision for mandatory detention pending completion of removal proceedings entirely displaces applicability of the Due Process Clause such that indeterminate detention is not only warranted, but required. Thus, Respondents argued here that Petitioner has no liberty interest that could implicate a due

3

process right to release because he never was lawfully admitted to the United States. *See* (Doc. 10 at 7) (arguing "a close reading of the relevant immigration statutes reveals that they do not entitle applicants for admission like [Petitioner] to anything besides mandatory detention.") (citation omitted).

But in making this argument, Respondents have *never* attempted to reconcile that after ICE detained Petitioner, immigration authorities released him under supervision, implicitly finding that his release presented neither flight nor danger risks. *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). Nor do Respondents refute or grapple with the fact that, for the approximately four-year period following his release on parole, Petitioner kept a clean criminal record within the terms of that parole, and Respondents do not address the Court's finding that "the question of whether Petitioner's missed biometric check-ins constitute changed circumstances sufficient to convince an immigration judge that detention is required, in light of rapidly evolving case law, necessitated that some pre-deprivation process was required here to justify Petitioner's re-detention." *See* (Doc. 19 at 13); *e.g.*, *Tzafir v. Blanche*, No. 25-cv-02126-JHC, 2026 WL 1413606, at *2 (W.D. Wash. May 20, 2026) (finding government's position not substantially justified where petitioner was ordered removed but then released on an order of supervision, complied with all conditions of release for years, and eventually was rearrested; reasoning, "when revoking a noncitizen's OSUP, the government must articulate changed circumstances in the noncitizen's case").

In addressing a related provision of the INA governing mandatory detention of certain noncitizens, the Supreme Court has recognized that such mandatory detention "does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." *Nielsen v. Preap*, 586 U.S. 392, 420 (2019) (interpreting § 1226(c)). The most reasonable interpretation of *Preap* is that immigration detainees retain procedural due process rights notwithstanding the operation of a statute providing for a detainee's mandatory detention. Indeed,

this interpretation – that statutory detention regimes are not to the exclusion of and do not displace a detainee's rights under the U.S. Constitution – is consistent with the Supreme Court's earlier holdings acknowledging this principle.  *See Zadvydas v. Davis*, 533 U.S. 678, 693, 695 (2001) (holding that the government's statutory authority to detain noncitizens pending removal "is subject to important constitutional limitations" because due process applies to anyone in the United States, "whether their presence here is lawful, unlawful, temporary, or permanent"); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (reiterating that a noncitizen who successfully enters the United States and afterwards is subject to removal proceedings retains due process rights) (citing cases), *superseded by statute on other grounds as stated in Dep't of Homeland Security v. Thuaissigiam*, 591 U.S. 103, 135 (2020).

In light of this authority and the circumstances set forth above, Respondents' contention that the Due Process Clause does not operate when an immigration detention statute applies is not substantially justified because such a position does not have a "reasonable basis" in law and fact. *Thangaraja*, 428 F.3d at 874.

### B.    Whether Petitioner's Fee Request is Reasonable

In determining what constitutes "reasonable" attorney's fees under the EAJA, "the district court must apply the hybrid approach adopted in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)." *United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1520 (9th Cir. 1991).  "First, the district court must calculate the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. [citation omitted].  Next, in rare instances, the court may increase or reduce the presumptively reasonable lodestar fee on the basis of factors" that are not captured by the lodestar calculation.  *Id*.

The Ninth Circuit maintains a list of the statutory maximum hourly rates authorized by the EAJA, adjusted for increases in the cost of living, on its website.  *See Thangaraja*, 428 F.3d at 876-77; "Statutory Maximum Rates Under the Equal Access to Justice," available at https://www.ce9.uscourts.gov/criminal-justice-act/statutory-maximum-rates/ (last visited June 16, 2026).  This maximum rate (presently $258.46) controls unless the district court finds that a "special factor" warrants a higher rate (*Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001)), such as

"where the quality of representation resulted in a degree of success beyond what would be reasonably expected at that rate." *Int'l Woodworkers of Am., AFL-CIO, Local 3-98 v. Donovan*, 792 F.2d 762, 766 (9th Cir. 1985).

Here, Respondents do not contest the reasonableness of the amount of fees requested by counsel for Petitioner. *See* (Doc. 26). According to the declaration of attorney Natalia Vieira Santanna, as counsel for Petitioner, she spent approximately 6.3 hours on tasks associated with litigating the merits of the case. Counsel billed approximately 6.3 hours on all tasks associated with the petition, including preparing the petition, communicating with Petitioner, drafting the motions to proceed via pseudonym and for temporary restraining order ("TRO"), and drafting the reply to Respondents' opposition to the TRO motion. (Doc. 23-3). Additionally, counsel for Petitioner seeks to recover for approximately 28 hours of time spent by her three paralegals on the litigation. (Docs. 23-2, 23-3). Counsel attaches the signed declaration of Petitioner E.A.P.C. in support of the motion. (Doc. 23-1).

For the sake of comparison, in an out-of-district immigration habeas case involving a similar amount of litigation as this action – the preparation and filing of a petition and motion by the petitioner to proceed by pseudonym, the litigation and hearing on the petitioner's application for temporary restraining order, and the petitioner's EAJA fee motion – the petitioner's three attorneys billed 50.55 hours. *See S.F. v. Bostock*, No. 3:25-cv-01084-MTK2026 WL 1230044, at *4-6 (D. Or. May 5, 2026). The undersigned's experience presiding over a significant number of immigration related habeas corpus cases, coupled with the hours found reasonable by the *S.F.* court in a similarly postured action, suggest that counsel's expenditure in this action of approximately 6.3 hours is reasonable. As to the billing entries for work conducted by paralegals, the tasks as recorded on the billing entries do not appear duplicative, consisting primarily of communication with Petitioner, collecting documents, drafting of documents, and service of documents. (Doc. 23-3). The undersigned finds the total expenditure of time by counsel for Petitioner and the three paralegals, approximately 34.3 hours, to be reasonable.

Counsel for Petitioner request paralegal fees at the rate of $150 per hour. (Doc. 23 at 10). Another judge within this District recently found this to be the upper end of the prevailing paralegal

6

rate, and the undersigned finds this rate to be appropriate. *See Saesee v. Bisignano*, No. 1:21-cv-01562-SKO, 2026 WL 1398969, at *3 (E.D. Cal. May 19, 2026).

In sum, the Court finds as follows:

(1) Total attorney hours deemed reasonable: 6.3 * $258.46/hr. = $1,628.30;

(2) Total paralegal hours deemed reasonable: 28 * $150.00/hr. = $4,200.00;

(3) Total fees deemed reasonable: $5,828.30.

In light of the above, and having found the requested amount reasonable, the undersigned will recommend that the motion be granted as to Petitioner's request for the award of attorneys' fees.

**C.     Petitioner's Additional Requests for Award of Costs and Motion Fees**

Petitioner also seeks an additional award of $3,098.00 in "reasonable costs" under 28 U.S.C. § 1920. (Doc. 23 at 10-11). Although Petitioner refers to the declaration of counsel for Petitioner and the "itemized time records" attached to his motion, neither document supports or otherwise addresses the requests for costs. *See* (Doc. 23-3); (Doc. 23-2, Declaration of Natalia Vieira Santana ("Santana Decl.")). Therefore, because the reasonableness of Petitioner's request for costs cannot be assessed based on the record, the undersigned will recommend denying an award for costs.

Separately, Petitioner raised for the first time in his reply brief that he requests an additional award of attorneys' fees in the amount of $1,615.37, reflecting 6.25 hours incurred in connection with litigating the instant motion. *See* (Doc. 27 at 4). While fees incurred in connection with an EAJA motion are recoverable, *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163-65 (1990), here, Petitioner's request for fees is deficient for the same reason noted above in regard to recovery for costs/expenses. Petitioner's application includes neither documentation verifying the 6.25 hours identified in the briefing nor an attorney declaration in which counsel attests to having expended 6.25 hours litigating the motion. And Petitioner's "itemized time records" (*see* Doc. 23-3) do not support granting an award for the additional requested $1,615.37 in fees. Therefore, the undersigned will recommend Petitioner's request for an additional award of $1,615.37 in fees be denied.

///

**IV.  Conclusion and Recommendation**

For the foregoing reasons, it is **HEREBY RECOMMENDED**:

1.  Petitioner's motion for the award of attorneys' fees (Doc. 23) be GRANTED IN PART:

   a.   Respondents be ordered to remit to counsel for Petitioner attorneys' fees and expenses in the amount of $5,828.30.

   b.   This award be made payable to Petitioner, but if the Department of the Treasury determines that Petitioner does not owe a federal debt, then Respondents shall cause the payment of attorneys' fees and expenses to be made directly to Petitioner's counsel.

   c.   Petitioner's request for an additional award of $3,098.00 in costs under 28 U.S.C. § 1920 (Doc. 23 at 10-11) be DENIED.

   d.   Petitioner's request for an additional award of $1,615.37 in fees (Doc. 27 at 4) be DENIED.

These findings and recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within 14 days** after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed 15 pages without leave of Court and good cause shown. The Court will not consider exhibits attached to the objections, but a party may refer to exhibits in the record by CM/ECF document and page number.  Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).

A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **June 17, 2026**

_____
UNITED STATES MAGISTRATE JUDGE

8